NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
BRENT A. WHITTLESEY (Cal. Bar No. 73493)
Assistant United States Attorney
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5421
    Facsimile: (213) 894-0142
    E-mail: Brent.Whittlesey@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>      Plaintiff, <br><br>          v. <br><br> $50,000.00 IN U.S. CURRENCY, <br><br>      Defendant. | No. 2:20-CV-10085 <br><br> VERIFIED COMPLAINT FOR FORFEITURE <br><br> 21 U.S.C. § 881(a)(6) <br><br> [DEA] |

    Plaintiff United States of America brings this claim against defendant $50,000.00 In U.S. Currency, and alleges as follows:

JURISDICTION AND VENUE

    1.   This is an _in rem_ civil forfeiture action brought pursuant to 21 U.S.C. § 881(a)(6).

    2.   This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendant in this action is $50,000.00 In U.S. Currency (the "defendant currency") seized by law enforcement officers from DeShawn Brothers ("Brothers") on April 29, 2020, at the Los Angeles International Airport, One World Way, Los Angeles, California 90045.

6. The defendant currency is currently in the custody of the United States Marshals Service in this District, where it will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Brothers and Janita Desirae Williams ("Williams") may be adversely affected by these proceedings.

## FACTS SUPPORTING FORFEITURE

8. On April 29, 2020, Drug Enforcement Administration ("DEA") Los Angeles International Airport ("LAX") Group 3[1] officers received information that Brothers was traveling on American Airlines flight number 2625 on a one-way ticket from Dallas/Fort Worth, Texas[2] to Los Angeles, California. Homeland Security Investigations ("HSI") agents at the Dallas/Fort Worth Airport ("DFW") alerted the LAX Group 3 officers about Brothers upon detaining Williams in DFW, who was

---

[1] DEA Group 3 is a task force comprised of DEA special agents, Los Angeles County Sheriff Department deputies and detectives, Los Angeles Police Department officers and Los Angeles Airport officers (collectively referred to herein as "officers").

[2] The Dallas/Fort Worth metropolitan area in Texas is a known consumer city for narcotics and Los Angeles is a known source city where narcotics can be purchased.

traveling with Brothers, after HSI agents discovered a large amount of U.S. currency in Williams' checked luggage at the DFW.  Williams initially stated that she had packed her own bag and did not know that it contained currency.  Williams then changed her story and said that DeShawn Brothers had given her the bag and may have put the money inside.  DFW task force officers were unable to speak to Brothers before he left on the flight to LAX but detained Williams, who missed her flight.  Both Williams and Brothers were booked on American Airlines flight number 2625 from DFW to LAX.

9.  The DEA/LAX Group 3 officers at LAX learned that Brothers had a criminal history involving robbery, firearms violations and a recent arrest for possession of marijuana in Fort Worth, Texas.  Officers planned to initiate a consensual encounter with Brothers upon his arrival to LAX to further investigate the purpose of his travel.

<u>Initial Encounter of Brothers</u>

10.  The DEA/LAX Group 3 officers identified Brothers as he deplaned from American Airlines Flight 2625 in LAX terminal five.  Task Force Officer ("TFO") Woodard and Special Agent ("SA") Cheek followed Brothers to the baggage claim area.  Both officers watched Brothers collect a large pink hard sided suitcase with four wheels and a retractable handle from the carousel.  As Brothers walked away from the carousel towards the terminal exit, TFO Woodard approached Bothers and displayed his DEA law enforcement identification.  TFO Woodard told Brothers that he was not under arrest but that Woodard wished to ask Brothers some security questions about his travel.  Brothers agreed to speak with TFO Woodard and said "okay."

11. Brothers told the officers that even though he had purchased his own one-way plane ticket the previous day, Brothers planned to return to Fort Worth the following day. When asked why Brothers was in Los Angeles, Brothers stated that he had come to purchase some bulldogs from a breeder in Pasadena. Brothers indicated that had not arranged for a rental car or a place to stay the night, but that he planned on using Uber for transportation while in town and still needed to book a hotel reservation. TFO Woodard asked Brothers if he was carrying any large amounts of U.S. currency, and Brothers responded that he had about $15,000.00 in the large pink suitcase. TFO Woodard pointed to Brothers' small black backpack and asked if Brothers had money in the backpack, and Brothers said no.

12. Brothers consented to a search of his bags. The backpack did not contain currency. However, the officers found multiple large bundles of rubber banded U.S. currency (<u>i.e.</u>, the defendant currency) wrapped inside of multiple t-shirts and a pillow case inside the suitcase. There were no other items in the suitcase. The DEA/LAX Group 3 members asked Brothers if he would be willing to walk to their office to further discuss the source and purpose for the large amount of U.S. currency in his possession. Brothers agreed, collected his backpack and suitcase, and followed the officers to the DEA/LAX Group 3 office.

13. Simultaneous to TFO Woodard's encounter with Brothers, Group Supervisor ("GS") Davis initiated a consensual encounter with a male, later identified as Kevin Anderson ("Anderson"). GS Davis observed that Anderson stood away from Brothers, but when Brothers began moving to the exit, so did Anderson. GS Davis approached Anderson from the side and advised him that he was not under arrest,

not in any trouble, but that GS Davis wanted to ask him a few questions and Anderson agreed. Anderson said that Brothers had purchased Anderson's air ticket, and that Anderson and Brothers were traveling together. Anderson also said that he and Brothers were staying downtown at a hotel for a couple of days. Anderson denied any knowledge of Williams, the female travel companion questioned at the DFW airport, being on the trip. Anderson left the baggage carousel area prior to the moment when Brothers voluntarily followed the officers to the DEA/LAX Group 3 office. Later, when officers asked Brothers about Anderson, he denied traveling with Anderson.

<u>Office Interview with Brothers</u>

14. At the DEA/LAX Group 3 office, Brothers again gave DEA/LAX Group 3 members consent to search his bags. TFO Woodard removed the multiple bundles of rubber-banded U.S. currency (<u>i.e.</u>, the defendant currency) found hidden inside the clothing items in Brothers' large suitcase. As TFO Woodard removed the U.S. currency, he commented to Brothers that it looked like there was more than $15,000.00 in currency and asked Brothers if he had more or the same amount as had been seized (believed to be approximately $30,000.00 at the time) earlier that day from his traveling companion, Ms. Williams. It is common for narcotics currency couriers to understate the amount of currency that they are carrying, or to not know how much currency is in their possession. Brothers then told officers that he was actually carrying about $30,000.00, and that Williams was carrying about $30,000.00 of his money for a total of $60,000.00 to buy two bulldogs. Brothers said that he thought it would be less suspicious if the total amount of his money was divided up among two bags instead of all in one bag. Narcotics currency couriers often believe

that they cannot be in possession of more than $10,000.00 in currency, or that currency in excess of $10,000.00 will not be detected if placed in their checked luggage.

15. Brothers said that he had never purchased dogs in California before but had seen an Instagram post from a man named Shawn Watkins in Pasadena who was breeding and selling bulldogs. Brothers said that he had been in contact with Shawn Watkins but Brothers was unable to provide a phone number for Watkins or proof of any correspondence, such as e-mails, texts, phone calls, Instagram messages.

16. Brothers stated that his annual income for 2019 was approximately $47,000.00, through work as a forklift driver and T-shirt seller. Brothers claimed to have saved all the currency found in his luggage by himself. Brothers further stated that he did not trust banks and that he currently had about $1,000.00 in his bank account. Brothers added that he had left no money at his residence, and so he was essentially traveling with his life savings. TFO Woodard told Brothers that investigators needed to see bank statements, receipts, pay records, sales records, etc. to help verify the source of the currency.

17. Brothers then distanced himself from the currency and said that other individuals had given him the currency and paid for the trip to California and so none of the currency belonged to him. Brothers declined to give specific amounts, names, or contact information for any of the other individuals. Brothers did not want law enforcement officers to contact any of his associates. Brothers signed a disclaimer stating that the owner of the money was "John

Smith" and that Brothers had been "given the money to come buy a dog."

18. Brothers, like so many other narcotics currency couriers, concocted false explanations as to why he was in possession of the currency.  When questioned closely about their explanations, narcotics currency couriers are unable to provide details or specifics that would support their explanation.

<u>Positive Canine Alert</u>

19. Officers placed the defendant currency in a DEA evidence bag and called for a trained, state certified, narcotics detection canine to come to the office.  Los Angeles Police Department ("LAPD") Officer Hillary Del Rio responded and brought her trained narcotics detection canine, K-9 Cooper, to the DEA office to conduct the sniff test.  K-9 Cooper alerted to the odor of narcotics emanating from the defendant currency indicating that the defendant currency had recently been in the presence of narcotics.

20. K-9 Cooper was first certified as a narcotics detection canine on June 6, 2017, by the LAPD, and the National Police Canine Association ("NPCA").  The most current NPCA certification was obtained April 30, 2019.  K-9 Cooper and Officer Del Rio have also been certified as a Narcotics Detection Team by the California Narcotic Canine Association ("CNA").  The most current CNCA certification was obtained September 23, 2019.  K-9 Cooper has been successfully used in over 75 investigations in which controlled substances were located and is responsible for the seizure of over 60 kilograms of methamphetamine, over 24 kilograms of heroin, over 50 kilograms of cocaine and over 80 pounds of marijuana.

Brothers' Criminal History

21. On April 12, 2012, the Fort Worth Police Department, Texas, arrested Brothers for aggravated robbery resulting in charges of (1) aggravated assault with a deadly weapon under Texas Penal Code, § 22.02(a)(2), (2) deadly conduct for discharge of a firearm at or in the direction of one or more individuals under Texas Penal Code, § 22.05(b)(1), and (3) aggravated robbery under Texas Penal Code, § 29.03. On December 20, 2012, Brothers was convicted of (1) and (2).

22. On April 11, 2017, the Ouachita Parish Sheriff's Office in Monroe, Louisiana arrested Brothers for operating a vehicle while intoxicated under the Louisiana Revised Statutes § 14:14:98.

23. On June 4, 2019, the Tarrant County Sheriff's Office in Fort Worth, Texas, arrested Brothers for possession of marijuana under Texas Health and Safety Code § 481.121(b)(1).

### CLAIM FOR RELIEF

22. Based on the above, plaintiff alleges that the defendant currency represents or is traceable to proceeds of illegal narcotic trafficking or was intended to be used in one or more exchanges for a controlled substance or listed chemical, in violation of 21 U.S.C. § 841 et seq. The defendant currency is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant currency;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

    (c) that this Court decree forfeiture of the defendant currency to the United States of America for disposition according to law; and

    (d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

DATED: November 3, 2020
NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Division

    /s/ *Brent A. Whittlesey*
BRENT A. WHITTLESEY
Assistant United States Attorney
Asset Forfeiture Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

VERIFICATION

I, Michael Woodard, hereby declare that:

1. I am a Task Force Officer with the U.S. Drug Enforcement Administration.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Verified Complaint for Forfeiture is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed Nov. 3, 2020 in Los Angeles, California.

MICHAEL WOODARD
Task Force Officer
U.S. Drug Enforcement Administration